**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY MICHAEL STEELE-EL,

        Plaintiff,

v.                              Case No. 18-12277
                                       Honorable Denise Page Hood

VALVOLINE INSTANT OIL CHANGE,
RONALD SMITH, RACHEL ELMORE and
ALEXIS KASACAVAGE

        Defendant.

_____/

**ORDER GRANTING DEFENDANT**
**RACHEL ELMORE'S MOTION TO DISMISS [Dkt. No.13] and**
**RESOLVING VARIOUS OTHER MOTIONS [Dkt. Nos. 20, 26, 27, 28]**

## I.    INTRODUCTION

On July 20, 2018, *pro se* Plaintiff filed this cause of action, and his application to proceed in forma pauperis was granted. Plaintiff alleges that he was employed by Defendant Valvoline Instant Oil Change ("Valvoline) from August 16, 2017 until being terminated on or about January 4, 2018. Plaintiff has filed claims against Valvoline and the other Defendants (Ronald Smith, Rachel Elmore, and Alexis Kasacavage) for: (1) Breach of Contract - Federal Laws/Constitution; (2) Fraud; (3) Defamation; (4) Intentional Infliction of Emotional Distress; and (5) Harassment. [Dkt. No. 1] Plaintiff's Complaint also contains a paragraph alleging that he was

discriminated against in his employment pursuant to: (a) Title VII of the Civil Rights Act, (b) Title 18, Part 1, Chapter 13 §§ 241, 242, and 245 of the United States Codes of Law; (c) Executive Order No. 13798 § 4 and 82 Fed. Reg. 21675; (d) the Universal Declaration of Human Rights Articles 1 and 2; (e) the Declaration of the Rights of Indigenous Peoples Articles 2 and 3; and (f) the Treaty of Peace and Friendship of 1787 and 1836. *Id.* at ¶7.

On September 13, 2018, Defendant Rachel Elmore ("Elmore") filed a Motion to Dismiss [Dkt. No. 13], which has been fully briefed. On September 18, 2018, Clerk's Entries of Default were entered against Alexis Kasacavage ("Kasacavage") and Valvoline. [Dkt. Nos. 16, 17] On September 27, 2018, Kasacavage and Valvoline filed a Motion to Set Aside Clerk's Entries of Default [Dkt. No. 20], which has been fully briefed. On October 12, 2018, Plaintiff filed "Plaintiff's Motion to Strike Defendant Rachel Elmore's Motion to Dismiss." [Dkt. No. 26] and a Motion for Alternate Service on Defendant Ronald Smith ("Smith"). On October 18, 2018, Plaintiff filed a Motion to Sanction Kasacavage and Defendants' attorney, Andrey Tomkiw, for filing the Motion to Set Aside Clerk's Entries of Default [Dkt. No. 28], to which Kasacavage and Tomkiw filed a response.

## II.   BACKGROUND

Plaintiff was hired by Valvoline as a Technician-In-Training on August 16, 2017.   He was promoted to a Certified Technician on October 16, 2017.   On November 7, 2017, Plaintiff made a Religious Accommodation Request, seeking to have Fridays and Sundays off for religious purposes (because he is a "Hebrew Moslem").   Elmore responded to Plaintiff by offering to give him Fridays off and have him work on Sundays only when asked.   Plaintiff indicates that, after being subjected to repeated problems and attacks from Smith (Plaintiff's site supervisor), Plaintiff submitted a written complaint to Elmore on December 19, 2017, asserting that Smith had created a hostile work environment for Plaintiff.   On December 20, 2017, Plaintiff and Elmore had a telephone conversation regarding the problems and attacks involving Smith.   Plaintiff states that Elmore was supposed to follow up with Plaintiff by the end of the business day on December 20, 2017, but she did not contact Plaintiff until January 4, 2018 (even though he had called her on December 28, 2017 and January 3, 2018).   When Elmore called Plaintiff on January 4, 2018, Elmore terminated Plaintiff for misconduct and mentioned a suspension about which Plaintiff was unaware.

Plaintiff claims he also asked Elmore for his employee file and other materials related to his employment by Valvoline, including by written request on December

20, 2017, and by fax and certified mail on January 8, 2018. Plaintiff contends he has not received any of the requested materials. In his Complaint, Plaintiff asserted claims against Elmore for: (a) Breach of Contract - Federal Laws/Constitution; (b) Fraud; and (c) Intentional Infliction of Emotional Distress.

## III.   APPLICABLE LAW

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     Rule 55**

Pursuant to Federal Rules of Civil Procedure 55(c), an entry of default may be set aside only upon the showing of: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of the adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from judgment. *See also Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983).

**IV.     ANALYSIS**

**A.     Elmore's Motion to Dismiss**

Plaintiff's first claim against Elmore is rooted in the protections afforded by Title VII.  As Elmore argues, the Sixth Circuit has unambiguously held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997) (citations omitted), *abrogated in part on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *See also Cotton v. Beaumont Health*, No. 12232, 2017 U.S. Dist. LEXIS 140571, at *13 (E.D. Mich. Aug. 31, 2017) (citing *Wathen*, 115 F.3d at 404-06); *Pettinato v. Prof. Parent Care*, No. 16-14419, 2017 U.S. Dist. LEXIS

105606, at **9-10 (E.D. Mich. July 10, 2017) (citing *Wathen*, 115 F.3d at 405-06) ("the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII" and that "an individual is not liable under Title VII" and "*Wathen* is a published opinion and thus our Court is bound to its decision.").

Plaintiff does not address the *Wathen* holding but argues that Elmore is an agent of Valvoline. Plaintiff relies on several cases from other Circuits, all of which were decided prior to *Wathen*. *See Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993); *Paroline v. Unisys Corp*. 89 F.2d 100, 104 (4th Cir. 1989); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir. 1986); *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982) (dicta); *Goodman v. Bd. of Trustees of Comm. Coll. Distr. 524*, 498 F.Supp. 1329, 1332 (N.D. Ill. 1980).

Plaintiff has not alleged that Elmore was anything more than an employee of Valvoline who worked in the company's Employee Relations Department. As such, Elmore does not meet the Title VII definition of "employer," which is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . ." Plaintiff's reliance on Elmore being an "agent" of Valvoline is not supported by case law in the Sixth

Circuit, as reflected in the recent decision in *Pettinato,* where the court relied on *Wathen* in rejecting the proposition that an employer's agent is a "statutory employer" for purposes of liability under Title VII. *Pettinato*, 2017 U.S. Dist. LEXIS 105606, at *8 (quoting *Wathen*, 115 F.3d at 405).

Plaintiff also has not alleged that Elmore is the alter ego of Valvoline. *See Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n.2 (6 th Cir. 2001) (in order to hold an individual liable in his or her official capacity under Title VII, a plaintiff must make a showing that the individual is the alter ego of the employer); *Ankofski v. M&O Mktg*. 218 F.Supp.3d 547, 553 (E.D. Mich. Nov. 4, 2016) ("when an employee has already sued a corporate employer under Title VII, an official capacity suit against a supervisor adds nothing to the litigation. That is because the employer and only the employer can be responsible for any relief the employee obtains, even if under the official capacity theory.").

The Court dismisses Plaintiff's Title VII claim against Elmore.

2. *Fraud*

As Plaintiff has alleged fraud, he must satisfy the requirements of Fed. R. Civ. P. 9(b), which provide that: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a claimant must "(1) specify the statements the plaintiff contends

were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Louisiana School Employees' Ret. Sys. v. Ernst & Young, L.L.P.*, 662 F.3d 471, 478 (6th Cir. 2010). As one court has explained, "[i]n order to satisfy Rule 9(b), plaintiffs must allege: (1) the time, place and content of the alleged misrepresentation; (2) the fraudulent scheme; (3) the fraudulent intent of the defendants; and (4) the injury resulting from the fraud." *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101, 1114 (W.D. Mich. July 25, 1996) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)).

Elmore argues that Plaintiff's Complaint fails to: (a) allege that Elmore made any material representations to him that she knew to be false or that were made recklessly without any knowledge of the truth; (b) identify any material representation by her that she intended Plaintiff to act upon and that he relied upon that material representation when acing upon it; or (c) any fraudulent scheme or intent by her. Elmore contends that Plaintiff's conclusory allegations tracking Rule 9(b) are not sufficient to establish a viable fraud claim. Citing *United States v. Quicken Loans, Inc.*, 239 F.Supp.3d 1014, 1025 (E.D. Mich. 2017) (citations omitted) (fraud cannot be based on "speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.").

Plaintiff's response does not adequately rebuke Elmore's argument. Plaintiff argues that Elmore's "silence [in response] to Plaintiff's many requests for [his] employee file, [the] employee handbook, Valvoline disciplinary procedures, and write-ups is equated with Fraud because there was a legal and moral duty to speak." Citing *United States v. Horton R. Prudden*, 424 F.2d 1021 (5th Cir. 1970). First, the *Prudden* case is not applicable to the present case as it involved a criminal tax fraud prosecution. Second, even if Elmore refused to respond to Plaintiff's requests for materials, such silence does not constitute a representation or an affirmative misrepresentation. *Id.* at 1033 ("the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and this showing must be clear and convincing").

Plaintiff argues that Elmore knowingly made a false representation by telling him Valvoline followed federal laws by giving him a partial accommodation. Plaintiff contends that Elmore's representation was misleading because it made him think it was wrong to exercise his religious rights and intended to place him at a disadvantage when he relied on it. Plaintiff has not alleged, however, that Elmore made any statement that Elmore knew to be false or made the statement recklessly without any knowledge of its truth, nor has he alleged that Elmore intended that Plaintiff act on it or that Plaintiff did act on it. The statement by Elmore that Valvoline followed federal

laws is simply her opinion, and it does not evidence a fraudulent scheme or intent.

Plaintiff's fraud claim against Elmore is dismissed.

### 3. *Intentional Infliction of Emotional Distress*

Plaintiff argues that Elmore's statement that Plaintiff was being terminated for "misconduct" was extreme and outrageous because the statement was defamatory, belittling, and suggested criminal intent, such that it caused severe emotional distress. The elements of an intentional infliction of emotional distress ("IIED") claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See, e.g., Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011). Liability for IIED has been found only where the conduct in question has been so outrageous and extreme that it goes beyond every form of decency and is "regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich.App. 670, 674 (1999). The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985).

Plaintiff indicates that his IIED claim is based on a number of paragraphs in the Complaint, but those paragraphs allege actions by Smith and Kasacavage. None of those paragraphs involve Elmore. *See* Dkt. No. 1, ¶¶ 45, 47-50, 64-70, 98, 99.

Plaintiff does not identify any allegedly "outrageous," "atrocious," or "intolerable" conduct committed by Elmore. Accordingly, Plaintiff's IIED claim is dismissed as it pertains to Elmore.

### 4. Miscellaneous "Claims"

As noted above, Plaintiff listed at Paragraph 7 of his Complaint a number of statutes Defendants allegedly violated when discriminating against him. The Court addressed his claim regarding Title VII above. The balance of his "claims" in Paragraph 7 should be dismissed because the underlying statutes do not allow for private causes of action. Plaintiff's claim asserted pursuant to "Title 18, Part 1, Chapter 13 §241, §242, and §245 of the United Codes of Law" is dismissed. *U.S. v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("The district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes.")). And, 18 U.S.C. § 245 "does not confer upon plaintiff a private right of action" or provide "a basis for any claim upon which relief can be granted." *Howard v. Supreme Court*, No. 2:07-cv-0514, 2007 U.S. Dist. LEXIS 79354, at *13 (S.D. Ohio Oct. 25, 2007) (citations omitted).

Plaintiff's claim brought pursuant to Executive Order No. 13798 § 4 and 82 Fed. Reg. 21675 is dismissed because "[w]here an executive order neither explicitly or impliedly creates a private remedy, the Court can conclude that no such right

exists." *Stroder v. Commonwealth of Ky. Cabinet*, No. 3:09-cv-00947-H, 2012 U.S. Dist. LEXIS 35886, at *3 (W.D. Ky. March 16, 2012) (citations omitted). The cited section from the Executive Order and the Federal Register simply states, "Religious Liberty Guidance. In order to guide all agencies in complying with relevant Federal law, the Attorney General shall, as appropriate, issue guidance interpreting religious liberty protections in Federal law." It does not expressly or impliedly create a private right of action.

Plaintiff's claim pursuant to the "Universal Declaration of Human Rights Articles 1 and 2" is dismissed as "the Universal Declaration of Human Rights is not a treaty or international agreement that imposes legal obligations." *Curtis v. Hardin*, No. 517CV-P85-TBR, 2017 U.S. Dist. LEXIS 95629, at *23 (W.D. Ky. June 20, 2017) (citing *Sosa v. Alvarez- Machain*, 542 U.S. 692, 734 (2004) ("[T]he Declaration does not of its own force impose obligations as a matter of international law.")). The document "is not enforceable in American courts," and, as such, Plaintiff's claim is dismissed. *See Curtis*, 2017 U.S. Dist. LEXIS 95629, at *23.

Plaintiff's claim pursuant to the Declaration of the Rights of Indigenous Peoples Articles 2 and 3 is dismissed because the Declaration of the Rights of Indigenous Peoples Articles 2 and 3 "is not recognized by United States federal courts as binding legal authority." *City of Euclid*, 2017 U.S. Dist. LEXIS 98375, at *25, fn. 8 (collecting

cases). Plaintiff's claim pursuant to the Treaty of Peace and Friendship of 1787 and 1836 is dismissed because "the Treaty of Peace and Friendship does not provide a private cause of action in a civil case … Plaintiff therefore cannot rely on the Treaty as the basis to assert claims against other United States citizens." *Bey v. Roberts*, No. 3:11 CV 1969, 2011 U.S. Dist. LEXIS 139460, at *7-8 (N.D. Ohio Dec. 5, 2011) (citing *Vuaai El v. Mortgage Electronic Registry System*, No. 08-14190, 2009 U.S. Dist. LEXIS 75582, at *31 fn. 11 (E.D. Mich. Aug. 24, 2009)).

Accordingly, for the reasons stated above, all of the foregoing "claims" should be dismissed against Elmore (and all Defendants).

5. *Conclusion*

For the reasons stated above, Elmore's Motion to Dismiss is granted.

**B.    Motion to Strike**

After Elmore filed the Motion to Dismiss, Plaintiff filed the Motion to Strike the Motion to Dismiss. In the introductory paragraph of the Motion to Strike, Plaintiff states: "Plaintiff hereby moves this Court to strike Defendant Rachel Elmore's Motion to Dismiss in its entirety." The rest of the document, including the conclusion, is dedicated to arguing why Elmore's Motion to Dismiss should be denied. Plaintiff includes five headings, including one for the introduction, one for each of the three claims against Elmore, and one for the conclusion, wherein he

"requests that this Court enter an order denying Defendants' Motion to Dismiss for Failure to State a Claim . . . [or] if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend his Complaint."[1]  Plaintiff does not identify the basis for – or any reason why – Elmore's Motion to Dismiss should be stricken.

For the reasons stated above, the Court finds that Plaintiff's Motion to Strike is mistitled and the Court treats the Motion to Strike as a response to the Motion to Dismiss, as that is what the filing substantively is.  The Court denies Plaintiff's Motion to Strike.

## C.    Motion to Set Aside Entries of Default re: Kasacavage and Valvoline

"Without proper service of process, the district court is without jurisdiction to make an entry of default against a defendant." *Sandoval v. Bluegrass Regional Mental Health-Mental Retardation Board*, 229 F.3d 1153, No. 99-5018, 2000WL 1257040, at *5 (6th Cir. 2000) (TABLE) (citing 10 A. Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2682); *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (explaining that "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant[,]" and "in the absence of personal jurisdiction, a federal court is powerless to proceed to an

---

[1]The Court notes that no motion to amend any pleadings has been filed, nor has any basis been proffered to show that amending a pleading would not be futile.

adjudication." (internal quotation marks and citations omitted)); *Etherly v. Rehabitat Systems of Mich.*, No. 13-11360, 2013 WL 3946079 (E.D. Mich. July 31, 2013) ("if service of process was not proper, the court must set aside an entry of default.").  A named defendant "becomes a party officially, and is required to take action in that capacity, only upon [proper] service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S 344, 350 (1999).

As recently stated by another judge in Eastern District of Michigan:

> When evaluating either a motion to set aside a proper entry of default or a default judgment, the court considers three factors: 1) whether the default was the result of the defendant's willful or culpable conduct; 2) whether the plaintiff would be prejudiced if the default is set aside; and 3) whether the defendant asserts any meritorious defenses to the claims. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1989).
>
> "**However, these three factors only require consideration when service of process is properly effected because without proper service the court has no jurisdiction to take any action over the defendant, including entering a default.**" *Adams v. Wilmington Finance/AIG*, 2012 U.S. Dist. LEXIS 98525, 2012 WL 2905918 at * 1 (E.D. Mich. 2012). "In other words, until a party has been properly served, the Court cannot take action against that party, including entering a default or judgment by default against that party." *Harper v. ACS-INC.*, 2010 U.S. Dist. LEXIS 114760, 2010 WL 4366501 at * 3 (E.D. Mich. 2010). Accordingly, "if service of process was not proper, the court must set aside an entry of default." *O.J. Dist., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003).

*Green v. City of Southfield*, No. 15-13479, 2016 U.S. Dist. LEXIS 208936, at **5-6

(E.D. Mich. Feb. 22, 2016) (emphasis added).

Similarly, in *United States v. Plesco*, No. 97-74042, 2012 U.S. Dist. LEXIS 71005, at *2 (E.D. Mich. May 22, 2012), the court adopted a report and recommendation that noted:

> As an initial matter, "if service was improper, the default judgment is void and must be vacated" pursuant to Fed. R. Civ. P. 60(b)(4). *United States v. Murphy*, No. 99-1436, 2007 U.S. Dist. LEXIS 78020, at *5 (E.D.N.Y. Sept. 28, 2007). Indeed,
>
> **The Sixth Circuit requires that a court set aside a default judgment if service of process was not proper.** *See Jalapeno Prop. Mgmt., L.L.C. v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001) (stating that "if the underlying judgment is void, it is a per se abuse of discretion for a court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)") (internal citations omitted) (emphasis in the original). Therefore, if service of process is not proper, the judgment is void, and the court must set aside Defendant's default judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1376-77, 176 L.Ed.2d 158 (2010).

*Plesco*, 2012 U.S. Dist. LEXIS 71020, at **11-12 (emphasis added) (collecting multiple Sixth Circuit and United States District Court cases within the Sixth Circuit holding the same). Although *Plesco* involved a default judgment, the same rationale applies with respect to an entry of default.

The clerk's entries of default against Valvoline and Kasacavage are set aside. First, Plaintiff failed to properly serve the summons and Complaint on Valvoline (a corporation) pursuant to Rule 4(h). Under Rule 4(h), personal service on a

corporation must be made on "an officer, a managing agent or general agent, or another agent authorized by appointment or by law to receive service of process." Rule 4(h) does not provide for service of process upon corporations by mail. *O.J. Distributing, Inc. v. Hornel Brewing Co., Inc.*, 340 F.2d 345, 354-55 (6th Cir. 2003) (having a receptionist sign for an overnight package is not sufficient under Rules 4(b) and (h)); *Larsen v. Mayo Med. Or.*, 218 F.3d 863, 868 (8th Cir. 2000). *Etherly v. Rehabitat Systems of Michigan*, No. 13-11360, 2013 WL 3946079 (E.D. Mich. 2013) (improper service where "someone at Rehabitat acknowledged receipt" of a certified mail package because "Rule 4(h)(1) does not authorize service of process by mail; it requires mailing combined with personal service of the agent."); *Amnay v. Del Labs*, 117 F. Supp. 2d 283, 268-87 (E.D.N.Y.) (holding that Rule 4(h)(1) does not authorize service on corporations by mail). Plaintiff's effort at service on Valvoline was deficient because he mailed it only to a Valvoline store, not an office of Valvoline, a resident agent of Valvoline, or an agent authorized by written appointment or law. M.C.R. 2.105(H)(1); *Kresch v. Miller*, 18-10025, 2018 U.S. Dist. LEXIS 98920, at **4-5 (E.D. Mich. June 13, 2018). As "sufficient service of process is a prerequisite to entry of default," *Jefferson v. United Car Co.*, No. 14-13749, 2015 U.S. Dist. LEXIS 75393, at *6 (E.D. Mich. June 11, 2015) (citations and quotations omitted), Valvoline had "no duty to plead until properly served." *Id.* Accordingly, the Clerk's

Entry of Default against Valvoline [Dkt. No. 17] was improper, and the Court sets aside the entry of default entered against Valvoline.

Second, Plaintiff did not properly serve Kasacavage. Federal Rule 4(e) explains that an individual "may be served in a judicial district of the United States by:"

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Because FRCP 4(e)(1) allows for service in accordance with the law of the state where the district court is located or where service is made, it is also necessary to review the service rules for Michigan (where case was filed) and Kentucky (where service on Kasacavage was attempted). According to Michigan Civil Rule 2.105(A), service on an individual may be accomplished by:

(1) delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant

acknowledges receipt of the mail. A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

MCR 2.105(A) (emphasis added). In Kentucky, pursuant to Ky. CR 4.04, service on an individual may be accomplished:

by delivering a copy of the summons and of the complaint…to him personally or, if acceptance is refused by offering personal delivery to such person, or by delivering a copy of the summons and of the complaint…to an agent authorized by appointment or by law to receive service of process for such individual.

Therefore, in accordance with the foregoing rules, Plaintiff could have properly served Kasacavage by (1) delivering a copy of the summons and complaint to her personally; (2) leaving a copy of the summons and complaint at Kasacavage's dwelling or usual place of abode with someone of suitable age and discretion that resides there; (3) delivering a copy of the summons and the complaint to an agent authorized to receive service for Kasacavage; or (4) sending a copy of the summons and complaint to Kasacavage by registered or certified mail, return receipt requested, and delivery restricted to Kasacavage with service being made when she acknowledged the receipt of the mail. Under the fourth option, a copy of the return receipt signed by Kasacavage must be attached to the proof of service.

Plaintiff's evidence that Kasacavage was "served" was that the certified mail package sent to Kasacavage at her work address in Kentucky was accepted and signed

for by "Rusty Wade." As Plaintiff attempted to serve Kasacavage by sending a copy of the summons and Complaint by certified mail to Valvoline's office, Plaintiff did not attempt personal and proper service of Kasacavage at her dwelling. Plaintiff also failed to personally serve Kasacavage because Rusty Wade, the individual that signed the return receipt, was not an agent authorized to receive service on behalf of Kasacavage, rendering the service not proper. *See Dortch v. First Fid. Mortg. Co. of Mich., Inc.*, 8 F. App'x 542, 546 (6th Cir. 2001) ("Delivery was not restricted to the addressee, nor did Csolkovits sign the receipt or otherwise acknowledge receipt of the service. Thus, it appears that Dortch did not effectively serve Csolkovits with process under state or federal procedure.").

For the foregoing reasons, the Court finds that Plaintiff did not properly serve Kasacavage. As the Court has concluded that neither Valvoline nor Kasacavage were properly served, the Court did not have the authority to enter a default or judgment against Valvoline or Kasacavage. *See Wells v. Rhodes*, 592 F. App'x 373, 377 (6th Cir. 2014) (quoting *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012)). Accordingly, the Court grants Defendants' Motion to Set Aside the Clerk's Entries of Default filed against Kasacavage and Valvoline.

### D.    Motion for Alternate Service

Plaintiff filed a Motion for Alternate Service pursuant to Rule 4(e)(1) in order

to serve Smith. Service of individual in Michigan usually must be accomplished as set forth in Rule 4(e) and M.C.R. 2.105(A), as set forth above. But, in certain circumstances, alternate service may be made in the discretion of the Court pursuant to M.C.R. 2.105(I):

Rule 2.105 Process; Manner of Service

\* \* \* \* \*

(I)     Discretion of the Court.

(1)     On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

(2)     A request for an order under the rule must be made in a verified motion dated not more than 14 days before it is filed. The motion must set forth sufficient facts to show that process cannot be served under this rule and must state the defendant's address or last known address, or that no address of the defendant is known. If the name or present address of the defendant is unknown, the moving party must set forth facts showing diligent inquiry to ascertain it. A hearing on the motion is not required unless the court so directs.

(3)     Service of process may not be made under this subrule before entry of the court's order permitting it.

Plaintiff claims that he made numerous unsuccessful attempts to serve Smith, including the following:

1. On August 9, 2018, mailing by certified, return receipt and restricted delivery to Smith at the Valvoline store at which Smith worked (16335 Mack Ave., Detroit, Michigan 48224), with attempted deliveries by U.S. Post Office workers on August 11, 2018 and August 16, 2018;

2. On September 6, 2018, mailing by certified, return receipt and restricted delivery to Smith at 5545 University Place, Detroit, Michigan 48224, which Plaintiff claims was an address for Smith that Plaintiff found doing a people search. Plaintiff indicates that this package was undeliverable at that address.

3. On September 11, 2018, Plaintiff purchased a comprehensive background report for Smith and, on September 14, 2018, a process server was hired to serve Smith. On September 24, 2018, the process server verified that 93 Perry Place, Wyandotte, Michigan 48192 is Smith's current home address when attempting to deliver there. The process server made seven unsuccessful attempts at the 93 Perry Place address.

Based on the representations of Plaintiff, the Court finds that service of process upon Smith cannot reasonably be made as provided in Rule 4(e) or M.C.R. 2.105(A), and service of process may be made in a manner which is reasonably calculated to give Smith actual notice of the proceeding and an opportunity to be heard. The Court finds that the interests of justice favor an order allowing Plaintiff to use an alternate method of service with respect to Smith. Accordingly, the Court Orders that service of the Summons and Complaint and a copy of this order be made by <u>all</u> of the following methods:

a. First class mail to 93 Perry Place, Wyandotte, Michigan 48192; **<u>and</u>**

b. Certified Mail, Return Receipt Requested to 93 Perry Place, Wyandotte,

Michigan 48192; **and**

c.     Tacking or firmly affixing it to the door at 93 Perry Place, Wyandotte, Michigan 48192.

The Court further Orders that, for each method used, proof of service must be filed promptly with the Court on or before October 21, 2019.

The Court grants Plaintiff's Motion for Alternate Service on Smith.

## E.     Motion to Sanction

On October 18, 2018, Plaintiff filed a Motion to Sanction pursuant to Rule 5 and Rule 11(b), alleging that Kasacavage and Defendants' attorney Andrey Tomkiw committed perjury in filing the Motion to Set Aside Default.  The Court need not consider the merits of the Motion to Sanction because Plaintiff failed to comply with the procedural requirements of Rule 11.  Rule 11(c)(2) provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). **The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.** If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(emphasis added).

It is undisputed that Plaintiff did not serve the Motion to Sanction on Andrey Tomkiw until October 15, 2018, only three days before filing the Motion to Sanction

in this Court, and there is no suggestion that the Motion to Sanction was served on Kasacavage at least 21 days prior to being filed in this Court (or at all).

For the reasons set forth above, the Court finds that Plaintiff failed to comply with the notice requirements of Rule 11(c)(2) before filing the Motion to Sanction. Accordingly, the Court denies Plaintiff's Motion to Sanction.

## V.    CONCLUSION

Accordingly, for the reasons stated above, the Court:

A.    GRANTS Elmore's Motion to Dismiss [Dkt. No. 13];

B.    GRANTS the Motion to Set Aside Clerks Entries of Default [Dkt. No. 20];

C.    DENIES the Motion to Strike [Dkt. No. 26];

D.    GRANTS the Motion for Alternate Services [Dkt. No. 27]; and

E.    DENIES the Motion to Sanction [Dkt. No. 28].

IT IS ORDERED.

s/Denise Page Hood
Dated:  September 24, 2019        United States District Judge